```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON

NAUTILUS INSURANCE COMPANY,    )
                               )
     Plaintiff,                )   Civil Action No. 09-CV-274-JMH
                               )
v.                             )
                               )
STRUCTURE BUILDERS & RIGGERS   )   MEMORANDUM OPINION AND ORDER
MACHINERY MOVING DIVISION,     )
LLC and BRAMER CRANE           )
SERVICES, LLC,                 )
                               )
     Defendants.               )
```

                    **   **   **   **   **

This matter is before the Court on Defendant Bramer Crane Services' motion to dismiss [Record No. 19] and a response to the Court's order filed by Structure Builders and Riggers Machinery Moving Division, LLC [Record No. 18], which the Court construes as a motion to dismiss. This matter is ripe for review.

Plaintiff, Nautilus Insurance Company ("Nautilus"), brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of rights under an insurance policy issued by Nautilus to Co-Defendant, Structure Builders & Riggers Machinery Moving Division, LLC ("Structure"). Structure and Bramer Crane Services, LLC ("Bramer") have asked the Court, in its discretion, to decline to consider this matter, as there is a related action pending in state court. For the reasons that follow, the Court will exercise its discretion to consider that matter.

**STATEMENT OF FACTS**

This case arises from work done for the Lexington Metal Systems, Inc. ("Lexington Metal") manufacturing facility in Montgomery County, Kentucky. Lexington Metal sought to relocate its manufacturing facility from Lexington, Kentucky to Mt. Sterling, Kentucky. Lexington Metal hired many companies and individuals, including Structure, to assist with its move. Specifically, Structure was asked to install a bridge crane ("Bridge Crane") at the Mt. Sterling facility. During the installation of the Bridge Crane, the straps used to support the Bridge Crane failed, causing the Bridge Crane to fall 15-20 feet to the ground. The Bridge Crane sustained substantial damage, and a replacement bridge crane ("Replacement Crane") was ordered at the request of Lexington Metal. Structure made a claim to its insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), for the property damage to the Bridge Crane. Fireman's Fund paid that claim in its entirety.

Bramer provided the Replacement Crane for Lexington Metal and Structure until a new bridge crane arrived. Bramer charged $134,258.33 for rental of the Replacement Crane and payment of its operators. The responsibility for payment of this amount is the primary issue in dispute. On July 17, 2006, Structure made a claim for the cost of the Replacement Crane under a Commercial General Liability Insurance policy issued by Plaintiff, Nautilus. On

September 6, 2006, Nautilus, by letter to Structure, denied coverage for the cost of the Replacement Crane.

On February 5, 2007, Structure filed suit in the Montgomery Circuit Court ("MCC") against Lexington Metals and Bramer, seeking a declaration that it was not responsible for the cost of the Replacement Crane. Bramer answered and counterclaimed against Lexington Metal and Structure, alleging breach of contract and seeking to recover the cost for the Replacement Crane rental. Over time, that action evolved to encompass a lien foreclosure against the property leased by Lexington Metals and a dispute concerning the cause of the damage to the Bridge Crane, including a third party claim by Lexington Metals against an individual identified only as Grizzle, a non-employee of Structure who nonetheless agreed to assist Structure's installation of the Bridge Crane at the Mt. Sterling facility, for negligence.

Lexington Metals also joined Nautilus in the action in MCC in the event that Nautilus may be responsible for payment of the Replacement Crane under the terms of its policy with Structure. However, Structure, the insured, has made no claim in the MCC as to whether the Nautilus policy covers the cost of the Replacement Crane. Nautilus entered an appearance and moved to dismiss the state court action on the ground that Lexington Metal lacked standing to assert Structure's claim for coverage under the Nautilus policy. The MCC has yet to rule on Nautilus's motion to

dismiss. The MCC has determined that Bramer is entitled to $184,757.85 for renting the Replacement Crane, but has not yet decided whether Lexington Metal or Structure is responsible for payment of that amount.

On August 7, 2009, Nautilus instituted this action, wherein it seeks declaratory relief to clarify any coverage issues with respect to payment for the Replacement Crane. Defendants now move to either dismiss this action or stay the case until the MCC decides which party in that action, Lexington Metal or Structure, is responsible for payment of Bramer's invoices for the Replacement Crane.

## DISCUSSION

**Applicable Law**

Nautilus filed this action with the Court under the Declaratory Judgment Act. Generally speaking, federal district courts may, in their discretion, determine whether and when to entertain an action under the Declaratory Judgment Act, even when the suit satisfies subject matter jurisdictional requirements. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Moreover, one can look to the very language of the statute to determine that the Court's power to exercise jurisdiction over actions for declaratory relief is discretionary. The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides:

> In a case of actual controversy within its jurisdiction [ . . . ] any court of the United States, upon the filing

4

> of an appropriate pleading, *may* declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (emphasis added).

The Supreme Court has characterized 28 U.S.C. § 2201 as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Thus, a district court has discretion to stay or dismiss an action for declaratory judgment.

In *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984), the Sixth Circuit articulated five factors a district court should consider before exercising its discretion to consider actions for declaratory judgment:

> [The court considers] the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for the race to res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

As with other balancing tests, no single factor is dispositive. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). The Court need only consider these factors in deciding whether to exercise its jurisdiction under the Declaratory Judgment Act.

**Application of *Grand Truck* Factors**

    1. Settlement of the Controversy

The first factor to consider is whether this Court's judgment would settle the controversy. Defendants argue that a declaratory judgment will not resolve the controversy between the parties. Defendants point to the pending litigation in the MCC where the parties are disputing who is responsible for Bramer's invoice for the Replacement Crane. Defendants argue that a declaration from this Court resolving insurance coverage between Structure and Nautilus cannot and will not resolve the dispute in MCC.

Indeed, some cases have found that while declaratory actions might clarify the legal relationship between the insurer and insured, they do not settle the ultimate controversy between the parties in the concurrent state litigation. *See, e.g., Grand Trunk*, 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case."). *See also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004)("A declaratory judgment would not resolve the insurance coverage controversy here.").

However, that line of cases appears to be decided on very specific factual situations. In *Grand Trunk*, for example, the plaintiff in the federal declaratory action sought to obtain in federal court a judgment that would overturn the state court's

order denying Grand Trunk's indemnity claim against its co-defendant. In *Bituminous*, the resolution of the insurance coverage issue depended solely on whether Shields, the injured plaintiff in the state court action, was an employee of J & L Lumber Co., the defendant in both the state and federal actions, at the time of his injury. The employment question between Shields and J & L was fact-based and a close question of state law. *Bituminous*, 373 F.3d at 813. Moreover, the state court was already considering the issue of Shields' employment status.

Nautilus characterizes this factor differently. Nautilus argues that the exercise of Section 2201 jurisdiction is proper when the Court can resolve the particular controversy framed by the action for declaratory judgment. This Court need not resolve the global controversy between the parties that is ongoing in the MCC. The Court, however, can resolve the scope of insurance coverage between Structure and Nautilus.

The procedural posture of this case is similar to *West American Ins. Co. v. Prewitt*, 401 F.Supp.2d 781 (E.D. Ky. 2005). In that case, Hensley, the owner of a sailboat destroyed at sea after crashing into a reef with Prewitt at the helm, filed suit for negligence against Prewitt in Clark County Circuit Court. Subsequently, Prewitt's insurer, West American, sought a declaratory judgment from this Court that its policy with Prewitt did not cover damage to the boat and that West American did not owe

Prewitt a duty to defend him in Clark Circuit Court. The action in Clark County addressed Prewitt's possible negligence in his operation of the sailboat, while the action for declaratory judgment in this Court focused on the language of the applicable exclusion in Prewitt's insurance policy, an issue which was not before the state court. Thus, this Court found that exercise of jurisdiction over the scope of insurance coverage was proper because it would not interfere with the litigation occurring in Clark County. *Id.* at 783.

Here, the ongoing litigation in MCC principally concerns who is responsible for payment of the Bramer invoice, Lexington Metal or Structure. This action for declaratory relief concerns the scope of the insurance coverage between Structure and Nautilus. A declaration would resolve this controversy. Thus, the first factor favors the Court exercising its jurisdiction.

**2. Clarification of the Legal Relations at Issue**

The second factor to consider is whether a declaratory judgment would serve a useful purpose in clarifying the legal relations at issue. Defendants argue that the legal relationship at issue here, Nautilus's potential obligation to pay the Bramer invoice based on its policy of insurance with Structure, is already before the MCC. Indeed, Lexington Metal asserted a third-party claim against Nautilus in the MCC. Defendants' argument is that this action is useless because of the pending claim in state court.

However, as Nautilus points out, its insured, Structure, has not sought adjudication of its rights under the insurance policy in MCC. According to Nautilus, Lexington Metal's third-party complaint against it should be dismissed because Lexington Metal lacks standing to seek a determination of the rights between Nautilus, the insurer, and Structure, the insured. *See United States v. Allstate Ins. Co.*, 754 F.2d 662, 665 (6th Cir. 1985)(recognizing the Kentucky rule that a third-party must allege and prove that a contract was intended for his benefit to recover under a contract to which he is not a party). Nautilus moved to dismiss this complaint, but the MCC has yet to rule on the motion to dismiss.

Regardless of Lexington Metal's third-party complaint against Nautilus, this factor weighs in favor of this Court exercising jurisdiction. The issue in question here is the legal relationship between Structure and Nautilus. Nautilus believes that it is not obligated to indemnify Structure under its insurance policy, and Structure disagrees. Thus, proceeding with the action for declaratory relief will clarify this legal relationship. Although there is a third-party complaint against Nautilus, the MCC has yet to address any of the policy-based coverage issues between Structure and Nautilus. Proceeding with the action in this Court will serve a useful purpose because it will resolve Nautilus's duties under its policy with Structure, where both are parties to

the dispute. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)(explaining that declaratory relief was proper despite not ending the dispute between the parties in state court but nonetheless resolving the insurance coverage issues).

### 3. Race for *Res Judicata*

The next factor to consider is whether the use of the action for declaratory judgment is motivated by "procedural fencing" or likely to create a race for *res judicata*. Defendants argue that this is procedural fencing because Nautilus is already a party to the MCC action. Although Nautilus moved to dismiss Lexington Metal's third-party complaint against it, the MCC has made no ruling with regard to Nautilus. Defendants claim that Nautilus brought the action to this Court to decide the insurance coverage rather than allow the dispute to be resolved in the MCC.

This factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale*, 513 F.3d at 558 (*quoting AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). When the declaratory plaintiff files his claim after the state court litigation has begun, courts generally give the plaintiff "the benefit of the doubt that no improper motive fueled the filing of [the] action." *Bituminous*, 373 F.3d at

814. Furthermore, a declaratory plaintiff "may properly choose the jurisdiction of federal rather than state court, a choice given by Congress." *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986).

Here, there is little evidence to suggest that Nautilus is engaging in procedural fencing. Although Nautilus is a party to the litigation ongoing in the MCC, there is a question as to whether the third-party plaintiff, Lexington Metal, has standing to assert a claim against Nautilus. Even if the MCC were to deny Nautilus's motion to dismiss Lexington Metal's claim, there is some doubt as to the effect that any adjudication would have on the Structure-Nautilus relationship because Structure, a party to the policy, has asserted no claim against Nautilus in the MCC. Nautilus now seeks a declaration determining the rights and responsibilities it owes to Structure under its policy, an issue which has not been explicitly addressed by the MCC because Structure is not a party to any claim against Nautilus. Nautilus is free to choose the forum in which it wants this dispute heard. Hence, an examination of this factor favors Nautilus.

**4. Increased Friction Between Federal and State Courts**

The fourth factor deals with the likelihood of whether accepting jurisdiction would increase friction between federal and state courts. In *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) the Sixth Circuit identified three additional sub-

11

factors to consider with regard to implications concerning federalism. The Court should consider:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Id.*

The first sub-factor asks whether the state court's resolution of the factual issues is necessary for the federal court's resolution of the declaratory judgment action. Here, the issue in the action for declaratory judgment is the scope of the Nautilus insurance policy. Under Kentucky law, "the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006). Hence, the scope of the Nautilus policy is an issue of law and does not require factual findings by the MCC. This sub-factor cuts in favor of Nautilus.

The second sub-factor asks which court is in a better position to resolve the issues in the declaratory action. Important in this inquiry is whether the legal issues involve new or complex matters of state law which would be better left to state courts. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d

266, 272 (6th Cir. 2007)("[T]he district court held that the state court would not be in a significantly better position to evaluate the terms or exclusions in the insurance contracts because both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."). However, the preference for state courts is lessened when the state law is clear. *Northland*, 327 F.3d at 454.

Here, interpretation of the exclusions in Nautilus's policy with Structure is a matter of state law. However, interpretation of the relevant exclusions is not so complex as to require a state court exclusively to hear such actions. At best, this sub-factor is neutral or weighs slightly in favor of Defendants.

The third sub-factor focuses on whether the issue in federal declaratory action implicates important state policies and is appropriately considered in state court. Here, there is a general policy favoring state courts resolving interpretation of insurance contracts. *Travelers*, 495 F.3d at 273. "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815 (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279)(6th Cir. 1990)). However, even though state law governs the scope of insurance coverage, "no state law or policy would be

13

frustrated by [this Court's] exercise of jurisdiction, which would require the application of [state] law." *Northland*, 327 F.3d at 454. As with the second sub-factor, both state and federal courts can exercise jurisdiction over insurance coverage disputes.

Because two of the three sub-factors are either neutral or weigh slightly in favor of Defendants, this factor weighs slightly against this Court exercising jurisdiction.

**5. Availability of Alternative Remedy**

The final factor to consider is the availability of alternative remedies. Defendants argue that the proper approach would be to allow the MCC to resolve the underlying issues in the state court. They argue that the MCC will decide which party, Lexington Metal or Structure, is responsible for payment of the Bramer invoice. If Lexington Metal is determined to be responsible, then this Court would waste time and resources on what would then be a non-issue over the scope of coverage between Structure and Nautilus.

Indeed, there are alternative remedies available to Nautilus. Nautilus could wait and allow the MCC to determine who is responsible for the Bramer invoice, or it could seek a declaration from a Kentucky court. *See* KRS 418.040 (2008)("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with

other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.").

While there are other remedies available to Nautilus, it has chosen to seek a declaration from this Court, and the Court will exercise its discretion to adjudicate this matter.  Although there is a pending third-party claim against Nautilus in state court, there are concerns as to whether the third-party plaintiff, Lexington Metal, even has standing to assert such a claim against Nautilus.  Nautilus has moved to dismiss this complaint, but the MCC has yet to rule on that motion.  Furthermore, Structure, the insured, is not a party to that claim in the MCC.

## CONCLUSION

A balancing of the factors weighs in favor of this Court exercising jurisdiction over this declaratory judgment action in which Nautilus seeks to determine the scope of its rights and responsibilities to its insured, Structure.  While policy may favor state courts resolving issues of insurance policy provisions, this Court is fully capable of resolving that dispute, given that the issues presented are not complex or novel issues of state law.

It is proper for this Court to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, to adjudicate the rights under the insurance policy issued by Plaintiff, Nautilus Insurance Company, to its insured, Co-Defendant Structure Builders

& Riggers Machinery Moving Division, LLC.  Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

    That Defendants' motions to dismiss [Record Nos. 18 and 19] shall be, and the same hereby are, **DENIED.**

    This the 29th day of March, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge