UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-CV-274-JMH |
| ) | |
| v. ) | |
| ) | |
| STRUCTURE BUILDERS & RIGGERS ) | **MEMORANDUM OPINION AND ORDER** |
| MACHINERY MOVING DIVISION, ) | |
| LLC and BRAMER CRANE SERVICES ) | |
| ) | |
| Defendants. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the plaintiff's Motion for Summary Judgment [Record No. 29]. Defendant Bramer Crane Services has filed a Response [Record No. 30], and Plaintiff Nautilus Insurance Company filed a Reply [Record No. 31]. Defendant Structure Builders & Riggers Machinery Moving Division, LLC failed to file any response to the plaintiff's Motion for Summary Judgment herein. This matter is now ripe for review.

Plaintiff Nautilus Insurance Company ("Nautilus") brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of rights under an insurance policy issued by Nautilus to Structure Builders & Riggers Machinery Moving Division, LLC ("Structure"). Nautilus now asserts that it is entitled to summary judgment, finding that the insurance policy does not provide coverage as a matter of law. For the reasons that follow, the Court will grant Nautilus' Summary Judgment Motion on the grounds that the breach of contract claims asserted against

Structure do not constitute an "occurrence" as defined in the insurance policy at issue and therefore Nautilus does not owe a duty to defend or to indemnify Structure.

### **Statement of Facts**

This case arises from work done for the Lexington Metal Systems, Inc. ("Lexington Metal") manufacturing facility in Montgomery County, Kentucky. Lexington Metal sought to relocate its manufacturing facility from Lexington, Kentucky to Mt. Sterling, Kentucky. Lexington Metal hired many companies and individuals, including Structure, to assist with its move. Specifically, Structure was asked to install a bridge crane at the Mt. Sterling facility. During the installation of the bridge crane, the straps used to support the bridge crane failed, causing the bridge crane to fall 15-20 feet to the ground. The bridge crane sustained substantial damage, and a replacement bridge crane was ordered at the request of Lexington Metal. Structure made a claim to its insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), for the property damage to the bridge crane. Fireman's Fund paid that claim in its entirety.

Bramer provided a replacement crane for Lexington Metal and Structure until a new bridge crane arrived. Bramer charged $134,258.33 for rental of the replacement crane and payment of its operators. The responsibility for payment of this amount is the primary issue in dispute. On July 17, 2006, Structure made a claim

for the cost of the replacement crane under its Commercial General Liability Insurance policy (the "Policy") issued by Plaintiff, Nautilus. On September 6, 2006, Nautilus, by letter to Structure, denied coverage for the cost of the replacement crane.

On February 5, 2007, Structure filed suit in the Montgomery Circuit Court against Lexington Metal and Bramer ("State Court Action"), seeking a declaration that it was not responsible for the cost of the replacement crane. Bramer answered and counterclaimed against Lexington Metal and Structure, alleging breach of contract and seeking to recover the cost of the replacement crane rental. Over time, that action evolved to encompass a lien foreclosure against the property leased by Lexington Metal and a dispute concerning the cause of the damage to the bridge crane, including a third party claim by Lexington Metal against an individual identified only as Grizzle, a non-employee of Structure who nonetheless agreed to assist with Structure's installation of the bridge crane at the Mt. Sterling facility, for negligence.

On June 4, 2008, Lexington Metal also joined Nautilus in the state court action in the event that Nautilus might be responsible for payment of the replacement crane under the terms of the policy it issued to Structure. However, it does not appear that the insured, Structure, claimed that the Nautilus policy covers the cost of the replacement in the state court action. The Montgomery Circuit Court held that Bramer is entitled to $184,757.85 for

renting the replacement crane on January 9, 2009.

On August 7, 2009, Nautilus instituted this action, wherein it seeks declaratory relief to clarify any coverage issues with respect to payment for the replacement.[1] Nautilus now seeks summary judgment in its favor on the coverage issue. While the Motion for Summary Judgment was pending before this Court, the Montgomery Circuit Court entered an Order and Judgment, dated January 27, 2011, finding that Structure was responsible for providing the replacement, and, further, that Structure contracted with Bramer for the replacement crane. Thus, Structure is liable to pay Bramer for the cost of the crane rental in the amount of $132,118 plus all interest accrued and accruing thereafter.

In the present action, Nautilus asserts that Structure failed to provide notice of the state court action, as required by the Policy, causing Nautilus prejudice and voiding the claim of coverage. In the alternative, Nautilus argues that the claims against Structure are breach of contract claims, which do not fall within the scope of an "occurrence" under the terms of the policy. Additionally, legal liability for "bodily injury" or "property damage" are specifically outside of the scope of the Policy due to (1) an exclusion for contractual liability assumed by the insured,

---

[1] Structure and Bramer asked the Court to decline to consider this matter, as there was a related action pending in state court. This Court exercised its discretion to consider it, and denied the Motion to Dismiss in its March 29, 2010 Order [Record No. 21].

(2) an exclusion for damages that are expected or intended from the standpoint of the insured, (3) a "care, custody or control" exclusion and (4) a "your work" exclusion.

## **Standard of Law**

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986)).

## Discussion

1.  <u>Nautilus has not demonstrated that it was prejudiced by its delayed notice of the claims against Structure in the State Court Action.</u>

Nautilus claims that Structure failed to provide notice to Nautilus of the claims brought against Structure, which was a condition precedent required by the General Commercial Liability ("GCL") policy issued by Nautilus, and, thus, the coverage is void. To deny coverage because the insured failed to provide prompt notice of a claim, the insurer must show that it is "reasonably probable that the insurance carrier suffered substantial prejudice from the delay in notice." *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 803 (Ky. 1991). "If the evidence on this issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact." *Jones*, 821 S.W.2d at 803. Summary judgment is only proper on this issue "where the proof is conclusive, or there has been a failure of proof." *Id.* Bramer asserts that Nautilus has not demonstrated that it was prejudiced by the delay in notice.

Nautilus asserts that the delay of notice meant that it was not able to assert its right to control the litigation, as provided in the Policy, and that it was not able to participate in the written discovery or depositions that took place before it was notified of the pending claims. Nautilus further alleges that it

6

was not able to meaningfully participate in settlement negotiations occurring during the course of the pending state court action. While discovery had taken place before Lexington Metal brought Nautilus in to the State Court Action as a third party in June, 2008, discovery also took place after Lexington Metal's Third Party Complaint was served on Nautilus and Nautilus had filed its Motion to Dismiss in the state court action on July 11, 2008. Nautilus contends that it was not given notice of depositions of at least five important witnesses, one of whom was Structure's representative. However, it is not clear from the materials before this Court whether the parties simply neglected to notify Nautilus of the depositions after it was a party to the State Court Action, or if the depositions actually occurred prior to Nautilus' notice of the state court action. For instance, although Nautilus contends that it was not given notice of the deposition of Don Bradford, upon whose testimony Bramer Crane's Motion for Summary Judgment was based, the deposition was taken on September 16, 2008, well after Nautilus was given notice of the action.

More important in Nautilus' view, however, is that the Montgomery Circuit Court set Bramer's damages, and the interest due on the liquidated damages on January 9, 2009. Bramer's motion for partial summary judgment, which resulted in the Montgomery Circuit Court setting the amount of damages, was filed *after* Nautilus entered an appearance, on December 12, 2008. Bramer admits that

Nautilus may not have received service of the motion, even though Nautilus was a party at that time. Nonetheless, Bramer asserts that Nautilus was aware of the partial summary judgment motion through Bramer's Second Trial Brief and by virtue of Nautilus' attendance at the hearing on January 9, 2009, at which time the Montgomery Circuit Court entered an Order setting Bramer's damages. Bramer asserts that Nautilus failed to object at the hearing to the motion for partial summary judgment, or contend the amount of damages, despite its alleged opportunity to do so.

While Nautilus claims in broad terms that there is a reasonable probability that it could have achieved a more favorable outcome of the litigation if it had received more timely notice, Nautilus does not identify how the result of the litigation would have differed if it had received earlier notice. Conspicuously absent from Nautilus' argument is any assertion that it was denied an opportunity to object to the damages found at the January 9, 2009 hearing, or any specific basis for its argument that Nautilus' earlier participation in the litigation would have reduced the damages awarded. Although Nautilus contends that it was not afforded adequate notice of the motion regarding damages, and was therefore prohibited from formulating an appropriate response, Nautilus was already a party at the time Bramer's Motion for Partial Summary Judgment was filed. Thus, the prejudice to Nautilus in this respect, if any, was not caused by Structure's

failure to notify Nautilus of the claims against it.

Nautilus asserts facts that support its argument that it was prejudiced, but it fails to meet its burden by showing it was reasonably probable that Nautilus was prejudiced by the delay of notice. Based on the conflicting evidence before the Court, reasonable minds could differ on whether Nautilus' earlier participation would have made any difference in the outcome of the litigation below or the amount of damages ordered by the state court action. This issue is one left for the trier of fact.

2. <u>Whether the claims asserted in the State Court Action and, thus, qualify as "occurrences" under Nautilus' policy.</u>

Nautilus asserts that the claims asserted against Structure in the state court action do not constitute "occurrences" under the policy. "The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy," which is determined by the "language of the complaint." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky. 1991); see *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001). If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader. *Id.*

While there were several claims at issue in the state court action, in so far as this dispute is concerned, the only relevant claims were those against Structure. Nautilus argues that the claims against Structure in the state court action were breach of

9

contract claims, which do not constitute an occurrence under the terms of the policy, and, therefore, Nautilus did not have a duty to defend or indemnify Structure. Only "occurrences" may trigger coverage under the CGL policy issued by Nautilus in this instance. The Policy provides as follows:

> SECTION I - COVERAGES
>
> An "occurrence" is defined as an event which constitutes an accident, or a fortuitous event(s):
>
> 1. Insuring Agreement
>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place within the "coverage territory";

(Policy, P. 1).

> SECTION V – DEFINITIONS
>
> 13. Occurrence
>
> An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Policy, P. 14).

Nautilus argues that the breach of contract claim brought by Bramer clearly falls outside of the scope of the language defining "occurrence." Bramer agrees that it only asserted breach of contract claims against Structure. However, Bramer contends that the Court should construe Lexington Metal's counterclaim as asserting a cause of action against Structure for negligence and,

10

thus, Lexington Metal's counterclaim[2] brings the state court action within the ambit of the Policy's coverage.

The language of Lexington Metal's counterclaim mentions Structure's negligence. However, Structure's negligence merely set into motion the facts giving rise to the formation of the contract with Bramer for the Rental Crane, which was later breached. Thus, Lexington Metal's claim was for indemnity based on Structure's breach of contract. While the Bramer invoices may have been the result of a chain of events that began with an accident allegedly caused by Structure's negligence, the claims against Structure were solely related to the responsibility for payment of the invoices. Structure's negligence did not cause its failure to pay Bramer's invoice as that was an intentional decision.

Having concluded that the only claims against Structure were

---

[2] In pertinent part, Lexington Metal's counterclaim against structure states:

> 12. [Structure] claims that the Defendant, [Lexington Metal], is responsible for paying any amounts owed to Bramer.
> 13. As a result of [Structure's] own negligence, Bramer has filed its cross-claim against the Defendant, [Lexington Metal], seeking payment for the debt owed by the Plaintiff, causing damage to [Lexington Metal].
> 14. As a result of [Structure's] own negligence, Bramer has also filed a lien on the premises occupied by [Lexington Metal] for which [Lexington Metal] is likely responsible to have released by any means necessary, pursuant to its lease agreement . . . which has caused damage to the Defendant, [Lexington Metal].
> (Lexington Metal Counterclaim, p. 3).

for breach of contract, this Court must now determine whether a breach of contract claim qualifies as an "occurrence" under a liability contract. Although the Kentucky Supreme Court has not squarely addressed this issue, the Kentucky Court of Appeals has reached a holding on this issue in *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368 (Ky.App. 2008), and this Court views that holding as persuasive. *In re Dow Corning Corp.,* 419 F.3d 543, 549 (6th Cir. 2005)("Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently"). In *Blevins*, the Court of Appeals adopted the Sixth Circuit's holding that "a breach of contract claim cannot constitute an "occurrence" under liability policies triggered by an accident or occurrence." *Blevins,* 268 S.W.3d at 374 (quoting *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001)).

Although *Blevins* and *Lenning* addressed homeowner's insurance policies, the reasoning behind these decisions is equally applicable to Nautilus' CGL Policy herein. The Court notes that the Western District of Kentucky, in an unpublished decision, which this Court finds persuasive, has also found that breach of contract claims do not constitute an "occurrence" as defined in a CGL policy. *Global Gear & Machine Co., Inc., v. Capitol Indemnity Corp.,* 2010 WL 3341464 (W.D.Ky 2010). In *Global Gear*, the Court noted that:

12

> In essence, this principle stems from the fact that commercial general liability insurance policies are intended to provide coverage only for events which are fortuitous, unforeseeable events, and not for the foreseeable results of an insured's deliberate conduct, which would include a claim for breach of contract. A commercial general liability policy is designed and intended to provide coverage to the insured for tort liability for physical injury to the person or property of others. A commercial general liability policy is not intended to provide coverage for the insured's contractual liability which merely causes economic losses.

*Id.* at *5 (quoting 9A *Couch on Insurance Third Edition* § 129:4 (2009)).

The Kentucky Supreme Court recently addressed whether faulty workmanship could be an occurrence as defined by a modern CGL policy. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69 (Ky. 2010). The Kentucky Supreme Court described its views on an "accident." *Cincinnati Ins. Co.,* 306 S.W.3d at 74.

> Inherent in the plain meaning of "accident" is the doctrine of fortuity. Indeed, the fortuity principle is central to the notion of what constitutes insurance.... Although we have used the term "fortuity" in the past, we have not fully explored its breadth and scope. In short, fortuity consists of two central aspects: intent, which we have discussed in earlier opinions, and control, which we have not previously discussed.
> We recently recognized that the concept of fortuity is "inherent in all liability policies," and explained that a loss was fortuitous if it was "not intended...." And we were correct in so doing because the issue of intent is one important aspect of the fortuity doctrine. As a leading insurance treatise notes, fortuity primarily concerns intent. So a loss or harm is not fortuitous if the loss or harm is caused intentionally by the insured.

*Cincinnati Ins. Co.,* 306 S.W.3d at 74 (citations and quotations

13

omitted). Simply put, Structure's intentional failure to comply with the terms of the agreement with Bramer was not a fortuitous accident, as required to fall within the term "occurrence" as defined in the policy. *Id.* Thus, the Policy does not provide any coverage for the claims asserted in the State Court Action, and Nautilus does not owe Structure a duty to defend or to indemnify.

Having determined that the state court action claims did not allege an occurrence that would fall within the terms of the Policy, this Court need not address Nautilus' alternative arguments that exclusions would apply for the assumption of liability in a contract or agreement, for property damage that is expected or intended from Structure's standpoint, or that the "care, custody or control" or "your work" exclusions would apply to these facts.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Record No. 29] shall be, and the same hereby is, **GRANTED**.

This the 24th day of March, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge